UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SABO D.,

              Plaintiff,

    v.

ANDREW M. SAUL,
Commissioner of Social Security,

              Defendant.

Case No. 19 C 5948

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Sabo D. seeks to overturn the final decision of the Commissioner of Social Security denying his claim for disability insurance benefits ("DIB") under the Social Security Act. The Commissioner seeks affirmance of the decision denying benefits. For the following reasons, the Commissioner's decision is reversed and this case is remanded for further proceedings.

## BACKGROUND

Sabo is a Bosnian war refugee who fled to Germany in 1991 and then came to the United States in 1999. He attended trade school for construction and has previous work experience as a handyman, bricklayer, and tile-setter. (R. 332). Sabo last worked in August 2015, when he says he became unable to work because of pain in his knees, back, elbow, and shoulder and an inability to concentrate. *Id*. at 36-38. Sabo testified that he experiences panic attacks, flashbacks and nightmares. *Id*. at 43-46. He also reported experiencing disassociative episodes while driving where he feels like he is going to black out and needs to pull over. *Id*. at 42, 49, 59. Sabo was diagnosed with post-traumatic stress disorder (PTSD) based on his experiences during the war, depressive disorder, generalized anxiety disorder, and mood disorder. *Id*. at 335, 338. Sabo filed for DIB on October 31, 2016, alleging disability since August 5, 2015 due to chronic debilitating

fatigue, joint pain, back pain, numbness in his left hand with swelling, inability to focus and concentrate, sleep disorder, panic attacks, anxiety, and depression. *Id*. at 162, 181. To qualify for DIB, Sabo was required to show that he was disabled on or before his June 30, 2016 date last insured ("DLI"). *Shiedler v. Astrue*, 688 F.3d 308, 311 (7th Cir. 2012).

Following the denial of Sabo's claim at both the initial and reconsideration levels, an administrative hearing was held before administrative law judge Lee Lewin on June 26, 2018. (R. 27-99). Sabo and his wife testified as well as Ashley Fargnoli, a licensed clinical professional counselor who treated Sabo ("Counselor Fargnoli"), a medical expert Ellen Rosenfeld, a licensed clinical psychologist, and a vocational expert. *Id*. at 33-74. On September 10, 2018, the ALJ issued an unfavorable decision denying Sabo's claim for DIB. *Id*. at 16-22. In his written decision, the ALJ found that Sabo's depression, anxiety, mood disorder, and PTSD did not alone or in combination significantly limit his ability to perform basic work-related activities for 12 consecutive months prior to his June 30, 2016 DLI. *Id*. at 18-22. After finding Sabo's testimony about the intensity, persistence, and limiting effects of his mental symptoms "not entirely consistent" with the record, the ALJ found that Sabo had "no limitation" in any of the four paragraph B functional areas for assessing the severity of a mental disorder. *Id*. at 20-22. To reach this finding, the ALJ gave "great weight" to the opinion of the ME (Dr. Rosenfeld) because she reviewed the entire record, listened to and observed Sabo's testimony, is a specialist in mental health, is experienced in providing testimony for disability hearings, and her testimony was consistent with the medical evidence. *Id*. at 20-21. The ALJ gave "little weight" to Counselor Fargnoli's opinion because there was no objective findings that supported her opinion that Sabo's restrictions were applicable to him prior to the June 30, 2016 DLI. *Id*. at 21. Since Sabo did not establish that he had any severe impairments during the relevant period, the ALJ found that he was

not disabled at step two. *Id*. at 22. The Appeals Council denied Sabo's request for review, leaving the ALJ's decision as the final decision of the Commissioner. *Id*. at 1-6; *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2017).

## DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotations omitted). "Although this standard is generous, it is not entirely

uncritical." *Steele*, 290 F.3d at 940. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Id.*

Here, the ALJ did not find any severe impairments at step two and denied benefits without continuing through the remaining steps. In support of his request for reversal and remand, Sabo asserts, among other things, that the ALJ erred by finding that his depression, anxiety, mood disorder, and PTSD were not severe impairments prior to the June 30, 2016 DLI. "A severe impairment is an impairment or combination of impairments that 'significantly limits [one's] physical or mental ability to do basic work activities.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting 20 C.F.R. § 404.1520(c)). "An impairment is not severe only if it is a slight abnormality that has no more than a minimal effect on the ability to do basic work activities, such as understanding, carrying out, and remembering simple instructions, responding appropriately to supervisors and co-workers, and dealing with changes in a routine work setting." *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) (citing SSR 96-3p and 20 C.F.R. § 404.1521) (internal quotations omitted). At step two, "[w]hen evaluating the severity of an impairment, the ALJ assesses its functionally limiting effects by evaluating the objective medical evidence and the claimant's statements and other evidence regarding the intensity, persistence, and limiting effects of the symptoms." *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016) (citing SSR 96-3p). The Seventh Circuit has emphasized that "[t]he Step 2 determination is 'a *de minimis* screening for groundless claims." *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016); *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999) ("severity is merely a threshold requirement.").

Sabo argues that the ALJ erroneously rejected the opinion of Counselor Fargnoli when assessing the severity of his mental impairments at step two. As a licensed clinical professional counselor, Fargnoli is not an acceptable medical source under the regulations. SSR 06-3p, 2006

4

WL 2329939, at *1 (Aug. 9, 2006). Nonetheless, an ALJ may consider evidence from other sources, such as therapists, social workers, nurse practitioners, or physician assistants, if their "special knowledge of the individual" allows them to "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id*. at *2. The regulations anticipate the possibility that "an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source." 20 C.F.R. § 404.1527(f)(1). The ALJ was required to sufficiently explain his assessment of Fargnoli's opinion. 20 C.F.R. § 404.1527(f)(2); *Brumbaugh v. Saul*, 2021 WL 1100562, at *3 (7th Cir. Mar. 23, 2021).

Sabo began mental health treatment with psychiatrist Ghazala Fayyaz, M.D., and Dr. Fayyaz's mental health team on December 30, 2016. Counselor Fargnoli was part of that mental health team, and she treated Sabo for his mental impairments from July 2017 to May 2018. Sabo attended weekly group and biweekly individual therapy sessions with Fargnoli. On October 25, 2017, Fargnoli completed an Affective Disorder Questionnaire. (R. 335-37). Fargnoli wrote that Sabo had been diagnosed with PTSD, major depressive disorder, and generalized anxiety disorder. *Id*. at 335. In this questionnaire, Fargnoli opined that Sabo's diagnoses limited his ability to work prior to June 30, 2016. *Id*. She noted that Sabo's depressive disorder was characterized by depressed mood, diminished interest in almost all activities, sleep disturbance, decreased energy, and difficulty concentrating or thinking. *Id*. Fargnoli opined that Sabo's mental impairments markedly impacted his ability to: interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id*. Fargnoli further opined that Sabo's mental impairments would cause him to be absent from work more than three times a month. *Id*. at 336.

Counselor Fargnoli also checked boxes indicating Sabo had only fair ability to: remember work-like procedures; understand, remember, and carry out very short and simple instructions; sustain an ordinary routine without special supervision; make simple work-related decisions; ask simple questions or request assistance; and respond appropriately to changes in a routine work setting. (R. 336-37). Fargnoli indicated that Sabo had poor ability to no ability to: maintain attention for a two-hour segment; maintain regular attendance and be punctual within customary, usually strict, tolerance; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and work week without interruptions from psychologically based symptoms; perform at a consistent pace without unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes; and deal with normal work stress. *Id*.

At the hearing before the ALJ, Counselor Fargnoli testified that she specializes in working with Bosnian refugees. (R. 61-62).[1] She opined that the degree of limitations Sabo experiences from his mental impairments more likely than not existed at least as of June 30, 2016. *Id*. at 56, 59. Fargnoli explained:

> It was really clear [Sabo] had a delayed onset of PTSD which was triggered by several major stressors in his life. One thing in particular was his son who was diagnosed with bipolar disorder in 2011 and had multiple hospitalizations and that was one very big trigger. Around that time he also had a lot of financial difficulties. He lost his job and he went bankrupt and that was all within the course of a year or two.

---

[1]     The ALJ expressed credited Dr. Rosenfeld's opinion on the ground that she "is a specialist in mental health, which gives her a particularly advantageous perspective." (R. 20). However, in his discussion of the weight of Counselor Fargnoli's opinion, the ALJ did not expressly acknowledge that Fargnoli specializes in treating Bosnian war refugees with PTSD like Sabo.

*Id*. at 56. Fargnoli stated that it is very typical for refugees who have had a traumatic experience not to experience symptoms for several years. *Id*. 61. In her practice working with Bosnian refugees, she often sees the onset of symptoms after the re-settlement process: "they try to get their life into place and then once they are settled they are symptomatic." *Id*. at 62.

The ALJ afforded Fargnoli's assessed limitations "little weight" because she "only started treating the claimant in July 2017." (R. 21). The ALJ wrote:

> While she stated that these restrictions would be applicable to the claimant prior to June 30, 2016, there is no evidence supportative that this would be true. At the hearing, she testified that she had no contact with the claimant prior [to] July 2017, either. As such, her opinion could not be found to be applicable prior to June 30, 2016, especially in light of the absence of supportive objective findings prior to this date.

*Id*.

Sabo contends that the ALJ impermissibly rejected Counselor Fargnoli's opinion because there were no supportive objective findings prior to the June 30, 2016 DLI.[2] The Court agrees that the ALJ clearly erred in discounting the opinion of Fargnoli on the basis that there were no supportive objective findings during the insured period.[3] Corroborating objective evidence was not required. Fargnoli offered a retrospective diagnosis, meaning a "medical opinion of the

---

[2]    In his briefing, Sabo incorrectly framed the issue regarding Fargnoli's opinion as whether the ALJ improperly failed to comply with Social Security Ruling 83-20's procedures for determining the onset date of disability. "However, SSR 83-20 only addresses the situation in which a finding is made 'that an individual is disabled as of an application date and the question arises as to whether the disability arose at an earlier time.'" *Schloesser v. Berryhill*, 870 F.3d 712, 718 (7th Cir. 2017) (quoting *Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004)). Because there was no finding of disability here, SSR 83-20 is inapplicable. *Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir. 2008) (concluding SSR 83-20 did not apply because "[w]ith no finding of disability, there was no need to determine an onset date."); *Wolms v. Barnhart,* 71 F. App'x 579, 581 (7th Cir. 2003) ( "[W]here, as here, there is no finding of disability under step two, SSR 83–20 is inapplicable"). The relevant issue here is more accurately framed as whether the ALJ properly rejected Fargnoli's opinion merely because it post-dated the June 30, 2016 DLI and there was a supposed absence of supportive objective findings prior to that date.

[3]    A similar criticism applies to the ALJ's reliance upon Dr. Rosenfeld's opinion who predicated her opinion on the fact that "there is nothing in the treatment as of January 2017 to support a severe medically - - mental health medically determinable impairment prior to June of 2016." (R. 69).

[c]laimant's impairments which relates back to the covered period." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). "Retrospective diagnosis of an impairment, even if uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claims period of disability, can support a finding of past impairment." *Allord v. Barnhart*, 455 F.3d 818, 822 (7th Cir. 2006) (internal quotations omitted). The Seventh has explained that "what is required [to establish a retrospective diagnosis] is contemporaneous corroboration [contemporaneous with the period of coverage, that is] of the mental illness, . . . not necessarily contemporaneous *medical* corroboration." *Id*. (internal quotations omitted).

In this case, there is evidence from Sabo and his wife that corroborates Counselor Fargnoli's opinion that Sabo's mental impairments significantly limited his ability to perform work-related activities before his June 30, 2016 DLI. *See* (R. 42-44, 46) (Sabo's testimony about his pre-DLI mental symptoms and limitations); *id*. at 48-51 (Sabo's wife's testimony about his pre-DLI mental symptoms and limitations). Thus, even if Fargnoli's retrospective diagnosis was uncorroborated by contemporaneous medical records (which is not necessarily the case given the treatment note from March 16, 2016 which the Court discusses in further detail below), Sabo's and his wife's testimony provide competent "lay evidence relating back to the claimed period of disability" to support an inference that his mental impairments were severe prior to the DLI. *Allord*, 455 F.3d at 822. Because Fargnoli's opinion supports a finding that Sabo's mental impairments were severe prior to the DLI and, as discussed more fully below, the ALJ improperly discredited Sabo's corroborative testimony, this error is not harmless.

In addition, the reasons the ALJ gave for discrediting Sabo's claim that his mental impairments were severe prior to the June 30, 2016 DLI are inadequate. An ALJ's assessment of a claimant's subjective symptoms will be reversed "if it is unsupported by substantial evidence or

8

rests on legally improper analysis." *Lambert v. Berryhill*, 896 F.3d 768, 777 (7th Cir. 2018). In this case, the ALJ found that Sabo's impairments "could have been reasonably expected to produce some of the alleged symptoms," but found his statements concerning the intensity, persistence and limiting effects of these symptoms are "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 20).

The only rationale the ALJ then gave for rejecting Sabo's assertion that prior to the June 30, 2016 DLI, he was unable to work because of his mental impairments was that the progress notes from his primary care physician in March and October 2016 "do not support [him] suffering from any mental impairments prior to June 30, 2016." (R. 20). The ALJ based this determination on five related grounds: (1) the medical record prior to June 30, 2016 is "sparse" with only two treatment records from Sabo's primary care physician, Dr. Kijana Seferovic, on March 2, 2016 and March 16, 2016; (2) neither of these progress notes provide a formal diagnosis of depression or posttraumatic stress disorder; (3) his mental status examinations were unremarkable; (4) he was diagnosed with a single episode of depression in October 2016, but this was nearly four months after the DLI; and (5) he only began receiving regular treatment for mental impairments in December 2016, nearly six months after his DLI. *Id*. at 20, 261-66.

There are several problems with the ALJ's proffered reasons, and they do not support his adverse subjective symptom determination. *See Ghiselli v. Colvin*, 837 F.3d 771, 778-79 (7th Cir. 2016). First, in evaluating Sabo's subjective statements, the ALJ incorrectly noted that neither the March 2, 2016 nor the March 16, 2016 progress notes from Dr. Seferovic "provide a formal diagnosis of depression or posttraumatic stress disorder, although he is recommended to see a psychiatrist." (R. 20). The ALJ further noted that "[w]hile he was diagnosed with a single episode of depression in consultation [with Dr. Seferovic] in October 2016, this was nearly four months

following the date-last-insured." *Id*. The ALJ's finding that Dr. Seferovic did not diagnosis a depressive disorder before the June 30, 2016 DLI constitutes a factual error. In fact, on March 16, 2016, more than three months before the June 30, 2016 DLI, Dr. Seferovic diagnosed Sabo with "major depressive disorder, single episode, unspecified." *Id*. at 263; *see also* (R. 66-67) (Dr. Rosenfeld testifying that the March 16, 2016 treatment notes indicate a "diagnosis of depression.").[4] Because an ALJ cannot base his decision on "serious factual mistakes," this error requires remand. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) (remanding where, among other errors, "the ALJ made a blatant factual error."); *Allord*, 455 F.3d at 821 (7th Cir. 2006) (noting that an ALJ may not base a credibility determination on "errors of fact or logic").

Second, the ALJ appears to have overlooked medical evidence from Sabo's March 16, 2016 visit to Dr. Seferovic that supported Sabo's mental health symptoms prior to the June 30, 2016 DLI. "An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (internal quotations omitted). The ALJ wrote that Sabo's mental status examinations on March 2 and March 16, 2016 were "unremarkable," which gives an incomplete picture of Sabo's mental condition on March 16, 2016. (R. 20). Although the ALJ noted that on March 16, 2016, Dr. Seferovic recommended that Sabo obtain a psychiatry evaluation, the ALJ ignored the rest of the notes from this session including: (1) Sabo complained of depression; (2) a psychiatric examination revealed "anxious and depressed" mood; (3) Dr.

---

[4]     The Court notes that there is an additional indication in the record to suggest that Sabo was diagnosed with a mental impairment prior to the June 30, 2016 DLI. The record reveals that on January 12, 2017, Sabo reported to his psychiatrist Dr. Fayyaz that "he was prescribed treatment of depression or anxiety 5 years ago by PCP." (R. 331).

Seferovic noted Sabo "seems depressed and down"; and (4) Dr. Seferovic's diagnosed depression. (R. 20, 262-63). By failing to mention these findings, the ALJ failed to construct an accurate and logical bridge from the evidence to his conclusion that Dr. Seferovic's records do not support Sabo suffering from any mental impairments prior to the June 30, 2016 DLI.

Third, while Sabo did not seek any mental health treatment prior to his DLI, the ALJ did not consider possible explanations for his not doing so. "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints," an ALJ "may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p, 2017 WL 5180304 at *9 (Oct. 25, 2017). At the same time, before drawing negative inferences about a claimant's symptoms for failing to pursue treatment, the ALJ must first consider the claimant's explanation for that failure. *Id*. at *9–10. ("We will not find an individual's symptoms inconsistent with the evidence in the record on [the basis of the frequency or extent of the treatment] without considering possible reasons he or she may not ... seek treatment consistent with the degree of his or her complaints."); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for lack of medical care before drawing a negative inference").

The ALJ did not examine whether Sabo's delay in seeking mental health treatment might be related to his lack of insight into the severity of his own mental condition. "Federal courts have long recognized that, in the context of mental illness, insight can play an important role in evaluating the claimant's credibility; and, by definition, a claimant with poor insight cannot be expected to understand the true nature of his impairments." *Lewis v. Astrue*, 2012 WL 5342669, at *7 (N.D. Ill. Oct. 25, 2012); *see also Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)

("those afflicted [with depression] often do not recognize that their condition reflects a potentially serious mental illness.").  Indeed, the Seventh Circuit has warned "ALJs assessing mental illness . . . [to] consider possible alternative explanations before racing to conclusions" about inconsistencies with seeking mental health treatment. *Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019); *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006).  At the hearing, Sabo explained that he did not seek medical treatment earlier because he thought that his symptoms were temporary and would pass. (R. 42-43, 45).  Sabo's wife similarly testified that Sabo refused to seek medical treatment because he thought his condition was temporary and would get better. *Id*. at 52-53; *see also id*. at 211. While this evidence was elicited at the hearing, the ALJ failed to consider this explanation when he emphasized Sabo's lack of mental health treatment prior to the June 30, 2016 DLI.

Moreover, Counselor Fargnoli testified that it was eight or nine months before Sabo opened up to her about the stressors in his life which triggered his delayed onset PTSD:

> He is very guarded and also has a tendency to kind of avoid talking about a lot of these things that are very traumatic in his life.  So it took a very long time for him to even identify kind of when these symptoms started, because there is a lot of shame around the loss of the job, shame around his son who was having very severe mental health issues as well as you know, losing his properties.

(R. 56-57); *see also id*. at 57-58 ("He is also very guarded. . . . he gets very nervous when he has to express himself.  He often stays to himself. . . . He kind of still isolates himself."); *Andrews v. Colvin*, 2016 WL 4905671, at *6 (N.D. Ill. Sept. 15, 2016) ("An individual with a mental illness might be embarrassed to seek treatment, or might not even understand what is wrong.").  The ALJ did not consider the possibility that Sabo's lack of insight, guarded behavior, and embarrassment may have contributed to his lack of psychological treatment prior to the June 30, 2016 DLI.

Another possible reason for Sabo's delay in seeking mental health treatment may be financial limitations. *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) ("the agency has expressly endorsed the inability to pay as an explanation excusing a claimant's failure to seek treatment."). The record suggests a lack of insurance and financial difficulties may have contributed to Sabo's lack of mental health treatment prior to the June 30, 2016 DLI. Fargnoli testified that prior to the June 30, 2016 DLI, Sabo had "a lot of financial difficulties." (R. 56). "He lost all his properties due to the economic recession. He lost his job and he went bankrupt and that was all within the course of a year or two." *Id.*; *see also* (R. 258) (noting on 10/26/2016, "[h]e also does not have insurance to do any exams or see specialists."); *id.* at 332 (noting on 12/30/2016, he was "self pay"). The ALJ did not address this evidence when making his subjective symptom assessment.

The remainder of the ALJ's adverse subjective symptom determination rests solely on the overall lack of support by the objective medical evidence prior to the June 30, 2016 DLI, which is not enough in itself to discredit Sabo. *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (ALJ cannot disregard a claimant's testimony "simply because it is not corroborated by objective medical evidence."); *Thomas*, 745 F.3d at 807 ("[A] lack of medical evidence supporting the severity of a claimant's symptoms is insufficient, standing alone, to discredit her testimony."); SSR 16-3p, 2017 WL 5180304, at *5. Because all of the other reasons given by the ALJ were flawed, the lack of supporting medical evidence cannot alone support discounting Sabo's testimony. *Thomas*, 745 F.3d at 806-07. Thus, the ALJ's evaluation of Sabo's subjective symptoms prior to the June 30, 2016 DLI requires remand.

## CONCLUSION

For the reasons stated above, Sabo's request for reversal and remand is granted in part and the Commissioner's request for affirmance is denied. Pursuant to sentence four of 42 U.S.C. §

405(g), the Commissioner's decision is reversed and this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Dated:  April 8, 2021

_____
Sunil R. Harjani
United States Magistrate Judge